UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GINEGAR LLC,

             Plaintiff,

    v.

SLACK TECHNOLOGIES, INC,

             Defendant.

Case No. 22-cv-00044-WHO

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 55

       Plaintiff Ginegar LLC ("Ginegar") filed suit against defendant Slack Technologies, Inc. ("Slack"), asserting that Slack infringed upon two patents owned by Ginegar related to instant messaging systems. Slack moves to dismiss, arguing that the claims are invalid because they are directed to ineligible subject matter and do not claim an improvement to instant messaging technology. Because the claims at issue recite an abstract idea and fail to include an inventive concept that elevates them to more than a patent on the abstract idea itself, Slack's motion to dismiss is GRANTED, with limited leave to amend.

**BACKGROUND**

**I.    FACTUAL BACKGROUND**

       Ginegar is the assignee and owner of U.S. Patent Numbers 9,367,521 (the "'521 Patent") and 9,760,865 (the "'865 Patent") (collectively, the "Patents"). First. Am. Compl. ("FAC") [Dkt. No. 27] ¶¶ 2, 15-16, 31-32 (citing Exs. A ('521 Patent), B ('865 Patent)). The Patents are directed to instant messaging systems, where "individuals can communicate with one another using text-based or other forms of communications over a network in substantially real time." *Id.* at ¶ 17. These systems typically operate through programs installed on user devices (i.e., computers, phones, or tablets) that connect to at least one instant message server. *See id.* at ¶¶ 17-18. Instant

messaging systems also enable users to communicate with each other in different ways; for example, users may converse via text or audio messages. *See id*. at ¶¶ 34-35.

### A.     The '521 Patent

The '521 Patent, entitled "Content and Context Based Handling of Instant Messages," was issued on June 14, 2016, and claims a method of processing instant message transactions between users during an instant messaging session. *See id*. at ¶¶ 15, 23-24 (citing '521 Patent).

The patent has two claims; Ginegar asserts both against Slack. *See* FAC at ¶ 53. The claims are directed to handling rules—stored on and obtained from an instant message server—that correspond to certain actions performed in response to receipt of an instant message. *See* '521 Patent at 18:2-26. Claim 1 is independent and recites the following:

> 1. A method of processing instant message transactions comprising:
>
> logging a first instant message client into an instant message server;
>
> obtaining from the instant message server, at least one handling rule that is evaluated in an instant messaging environment in response to receipt of a message, each handling rule defining a condition based upon at least one of identified content or identified context, and a corresponding event handling action to be performed within the instant message environment;
>
> identifying an instant message conversation within the instant message environment between a user and a correspondent;
>
> evaluating each handling rule;
>
> performing the corresponding event handling action of an associated handling rule if it is determined that the condition of that handling rule is satisfied; and
>
> conveying to the user participating in the instant message conversation, an indication that the corresponding event handling action was performed.

*Id*. at 18:2-22.

The '521 Patent's specification explains that a "handling rule" defines a condition, based on content and/or context, and a corresponding "handling action" that occurs if that condition is met. *See id*. at 3:25-32. In other words, when a user receives an instant message, the handling rules are evaluated, and any corresponding handling action is performed. *See* FAC at ¶ 28. Those

United States District Court
Northern District of California

actions include "showing another user's online status, filtering instant messages, generating notifications, generating messages, or limiting display screen interruptions." *See id.* at ¶ 29.

There are two types of handling rules, based on conditions in the instant messaging environment: (1) rules based on the content detected in an instant message; and (2) rules based on the context of user activity. *See* '521 Patent at 3:7-24. Content-based rules respond to information internal or external to the instant message system, such as designated words in a message. *See id.* at 3:20-24. Context-based rules pertain to events that "characterize user behavior, user activity, environment, setting, hierarchical prioritizations and/or other factors"—for example, detecting when the user is typing on her device by monitoring the number of keystrokes per unit of time. *See id.* at 3:16-19, 12:30-35. For both types of handling rules, once the appropriate condition is satisfied, the corresponding action is performed, and the user is notified that the action occurred. *See id.* at 2:11-16.

The instant message system may include a presence and awareness server to "support instant messaging within a collaborative environment." *See id.* at 4:9-16. This server can notify a user's designated contacts when that user is "present" in the instant message system and available for conversation. *See id.* at 4:21-34. The server can also "execute components directed towards other collaborative objectives such as on-line conferencing, paging, person locating and contacting, [and] calendaring." *See id.* at 4:17-21.

Claim 2 is dependent on Claim 1 and recites the following:

> 2. The method according to claim 1, wherein at least one handling rule is autonomically generated based upon a dynamic evaluation of at least one of a user or a community of instant message users.

*Id.* at 18:23-26. Claim 2 thus recites the limitation of autonomically generating a handling rule in response to instant message transactions within an instant messaging system. *See id.* The patent's specification explains that the instant message server software "may comprise an adaptive and/or autonomic behavior manager for providing dynamic autonomic features for instant message enhancement." *Id.* at 6:66-7:2. For example, the manager may detect that a user quickly closes instant message windows during certain hours of the day but responds to messages during other

hours, and can build a rule predicated on designated time frames.  *See id.* at 11:61-12:6.

## B.    The '865 Patent

The '865 Patent, entitled "Multi-Modal Transcript Unification in a Collaborative Environment," was issued on September 12, 2017, and claims methods and systems related to multi-modal instant messaging systems, where users can communicate via text and audio in a single chat session.  *See* FAC at ¶¶ 31, 33, 36 (citing '865 Patent).

The patent has 16 claims; Ginegar asserts Claims 1, 8, and 10 against Slack.  *See* FAC at ¶ 76.  The claims all relate to a single instant messaging session between two users that "automatically log[s] a unified chat transcript that contains both audio messages and text messages."  *Id.* at ¶¶ 40-42.  Claim 1 is directed to a method for generating a transcript that contains both message types exchanged in a session; Claim 10 is directed to a computer program product that essentially performs the method in Claim 1.  *See* '865 Patent at Claims 1, 10.  Claim 8 is directed to a system that contains an instant messenger which maintains the multi-modal session and records the corresponding multi-modal transcript.  *See id.* at Claim 8.

Claim 1 of the patent is an independent claim and recites the following:

> 1. A method for generating a unified chat transcript for a multi-modal conversation in an instant messaging session, the method comprising:
>
> establishing a single instant messaging session between two conversants;
>
> receiving text messages as part of a conversation between the two conversants, through the single instant messaging session;
>
> embedding in the instant messaging session a voice message received from one of the two conversants;
>
> classifying each one of the embedded voice message and the received text messages by type, the type of message being one of a voice message and a text message;
>
> determining if the one of the voice and text messages is classified as a voice message; and,
>
> logging the classified voice and text messages in a single transcript of conversation between the two conversants occurring in the single instant messaging session in response to determining that the one of the received voice and text messages is classified as a voice message.

United States District Court
Northern District of California

4

*Id*. at 5:24-44.  Creation of the unified transcript is automatically initiated when, after text messages are exchanged, one of the two users participating in the session sends a voice message. *See id*. at 5:29-39.  The patent's specification explains that automatically logging the unified chat transcript cures a deficiency in prior instant message systems, which lacked the ability to log multi-modal communication in one conversation.  *See id*. at 1:38-43.

Claim 8 of the patent is an independent claim and recites the following:

8. A collaborative computing data processing system comprising:

a processor;

an instant messenger configured to maintain a multi-modal instant messaging session between first and second conversants; and

multi-modal transcript unification logic, executing on the processor and configured to

establish a single instant messaging session between two conversants,

receive text messages as part of a conversation between the two conversants, through the single instant messaging session,

embed in the instant messaging session a voice message received from one of the two conversants,

classify each one of the embedded voice message and the received text messages by type, the type of message being one of a voice message and a text message,

determine if the one of the voice and text messages is classified as a voice message, and

log the classified voice and text messages in a single transcript of conversation between the two conversants occurring in the single instant messaging session in response to determining that the one of the voice and text messages is classified as a voice message.

*Id*. at 5:65-6:25.  Claim 8 differs from the other two asserted claims in that it claims the elements of a processor, an instant messenger, and a multi-modal transcript unification logic.  *See id*. Within this system, the processor executes the logic to effect the method claimed in Claim 1; the

5

instant messenger maintains the instant message session where the method of creating a unified transcript occurs. *See id.* at 6:1-5. The specification explains that the multi-modal transcript logic can function in the instant message environment; it can include program code to allow, receive, and record voice and text messages exchanged between users. *See id.* at 2:31-37.

Claim 10 of the patent is an independent claim and recites the following:

> 10. A computer program product comprising a computer usable storage medium that is not a transitory signal per se, having computer usable program code stored thereon for generating a unified transcript for a multi-modal conversation, the computer usable program code, when executed on a computer hardware device, causing the computer hardware device to perform the operations of:
>
> establishing a single instant messaging session between two conversants;
>
> receiving text messages as part of a conversation between the two conversants, through the single instant messaging session;
>
> embedding in the instant messaging session a voice message received from one of the two conversants;
>
> classifying each one of the embedded voice message and the received text messages by type, the type of message being one of a voice message and a text message;
>
> determining if the one of the voice and text messages is classified as a voice message; and,
>
> logging the classified voice and text messages in a single transcript of conversation between the two conversants occurring in the single instant messaging session in response to determining that the one of the received voice and text messages is classified as a voice message.

*Id.* at 6:29-55. Claim 10 differs from the other two asserted claims in that it claims the elements of a computer usable storage medium and program code. *See id.* In other words, Claim 10 claims software code that, when executed by a computer hardware device, allows the hardware to generate a unified chat transcript. *See id.* at 6:33-35, 50.

## II.    PROCEDURAL BACKGROUND

On February 19, 2021, Ginegar filed a complaint in the District of Colorado alleging patent infringement by Slack. Dkt. No. 1. The complaint was later amended and the case transferred to

this district on January 4, 2022.  *See* Dkt. Nos. 27, 46.  On January 18, 2022, Slack filed this

motion to dismiss.  Dkt. No. 55.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails

to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss,

the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff

pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for

the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There

must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  While courts

do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to

"raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

court accepts her allegations as true and draws all reasonable inferences in her favor.  *See Usher v.*

*City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to

accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or

unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper

to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."  *Genetic Techs.*

*Ltd. v. Merial LLC.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016).  However, "plausible factual

allegations may preclude dismissing a case under § 101 where, for example, nothing on the record

refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6)."  *Aatrix*

*Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (internal

citations and modifications omitted).  As the Federal Circuit stated in *Aatrix*:

> [P]atentees who adequately allege their claims contain inventive concepts
> survive a § 101 eligibility analysis under Rule 12(b)(6). . . . While the
> ultimate determination of eligibility under § 101 is a question of law, like
> many legal questions, there can be subsidiary fact questions which must be
> resolved en route to the ultimate legal determination. . . . Whether the claim
> elements or the claimed combination are well-understood, routine,

United States District Court
Northern District of California

conventional is a question of fact.

882 F.3d at 1126-28.[1]

## DISCUSSION

Slack argues that because the Patents are directed to ineligible concepts (in the form of abstract ideas) and do not recite inventive concepts, they are invalid. *See* Mot. to Dismiss ("MTD") [Dkt. No. 55] 1:4-9. Ginegar responds that the Patents are not directed to abstract ideas and that even if they were, they are patentable subject matter because they recite improvements to instant messaging systems. *See* Oppo. at 4:16-19, 9:24-26, 14:15-19, 15:28-16:2. I will address each point in turn, as they relate to both patents and the claims at issue.

## I.   PATENTABLE SUBJECT MATTER

An invention must be directed to one of four statutory categories of subject matter that can be patented, known as eligible subject matter: processes, machines, manufactures, and compositions. 35 U.S.C. § 101. Even when directed to an eligible category, the invention must also qualify as patentable subject matter. There are three judicially created exceptions that are considered ineligible subject matter and therefore are not patentable: laws of nature, natural phenomena, and abstract ideas. *See Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). Abstract ideas include "mental processes" and "intellectual concepts," and are not patentable subject matter "as they are the basic tools of scientific and technological work." *See Gottschalk v. Benson*, 409 U.S. 63, 67 (1972). The reason for the exceptions is clear enough—"such discoveries are manifestations of nature, free to all men and reserved exclusively to none." *Chakrabarty*, 447 U.S. at 309 (internal citation omitted).

Considering these exceptions, the Supreme Court devised a two-step test for determining whether a claim recites patentable subject matter: (1) whether the claim is directed to an ineligible concept; and (2) if so, whether the claim recites additional elements beyond the ineligible concept.

---

[1] Ginegar contends that "Slack must prove, by clear and convincing evidence, that each asserted claim of the patents-in-suit is invalid as directed to an abstract idea." Oppo. [Dkt. No. 60] 2:26-27. In support, it primarily relies upon *Berkheimer v. HP Inc*., 881 F.3d 1360 (Fed. Cir. 2018), which was decided a week before *Aatrix*. *See id.* at 2:5-25. It is worth noting that *Berkheimer* was appealed after summary judgment, not a motion to dismiss, as in *Aatrix*. *See Berkheimer*, 881 F.3d at 1362; *see also Aatrix*, 882 F.3d at 1123. The Federal Circuit also made clear in *Berkheimer* that "[p]atent eligibility has in many cases been resolved on motions to dismiss" and that "[n]othing in this decision should be viewed as casting doubt on the propriety of those cases." 881 F.3d at 1368.

United States District Court
Northern District of California

*See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012). The test was further explained in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014), where the Court described the second part of the test as "a search for an 'inventive concept'" that adds "significantly more" to the ineligible concept.

The first step in evaluating whether claims are patent eligible is determining what type of matter they are directed to and whether it fits within one of the four statutorily provided categories. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713–14 (Fed. Cir. 2014). If the claims recite categories of eligible subject matter, the court must then determine whether they claim patentable subject matter by employing the *Mayo/Alice* test. *See id.*

## II.      THE '521 PATENT

In the '521 Patent, Claim 2 is dependent on Claim 1; therefore, the analysis is similar for each claim. *See* '521 Patent at Claims 1, 2. Both are method claims that fall within a patent-eligible category under section 101. *See* 35 U.S.C. § 100(b) (defining "process" as "process, art or method"); '521 Patent at 18:2 ("A method of processing instant message transactions . . ."). However, under the *Mayo/Alice* framework, both are directed to abstract ideas, and neither applies an abstract idea such that it elevates the claim to more than a patent on the idea itself.

### A.      Whether The Claims Are Directed To An Ineligible Concept

At step 1 of the *Mayo/Alice* test, the court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. at 217. Both the Supreme Court and the Federal Circuit instruct courts to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (citing *Alice*, 573 U.S. at 221). "[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether their character as a whole is directed to excluded subject matter." *Id*. at 1335 (internal citation and quotation marks omitted). For claims that are purportedly directed to improvements in computer capabilities, the inquiry asks whether "the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." *Id*. at 1336.

United States District Court
Northern District of California

Slack argues that the '521 Patent is directed to the abstract idea of evaluating and responding to a message based on its content or context—an activity it contends "humans have long been doing manually since the pre-computer world"—and does not disclose any improvements to computer or instant messaging technology.  *See* MTD at 6:22-24, 10:22-23.

Ginegar insists that the claims are not directed to an abstract idea, and instead claim a "novel method of processing instant messages in a way that enhances or extends the functionality of existing instant messaging systems."  *See* Oppo. at 4:16-19.  It contends that the invention "enhance[s] an instant message system using a specific type of server to send a specific class of handling rules to an instant message client."  *Id*. at 10:28-11:4.

"The analysis of the claims' character must start with the content of the claims themselves."  *Ultramercial*, 772 F.3d at 714.  Claim 1 involves responding in certain ways to the receipt of instant messages, based on pre-established rules that are stored on a server.[2]  *See* '521 Patent at 18:2-22.  Similar claims have been found to be directed to an abstract idea.  For example, in *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016), the Federal Circuit held "that receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization—in other words, filtering files/e-mail—is an abstract idea."  The court went on to explain that

> it was long-prevalent practice for people receiving paper mail to look at an envelope and discard certain letters, without opening them, from sources from which they did not wish to receive mail based on characteristics of the mail.  The list of relevant characteristics could be kept in a person's head.  Characterizing e-mail based on a known list of identifiers is no less abstract.  The patent merely applies a well-known idea using generic computers to the particular technological environment of the internet.

*Id*. at 1314 (citation omitted).

In other words, when an invention merely replaces human activity with a computer, it is still directed to an abstract idea.  *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("the focus of the claims is not on . . . an improvement in computers as tools, but

---

[2] The parties disagree on whether the claims are directed to handling rules or to the instant messages themselves.  *See* MTD at 7:17-18 ("what is being evaluated is the context or content of a message"); Oppo. at 8:5-6 ("Evaluating a message is not required in order to practice the claims.").  Either way, the analysis is the same.

United States District Court
Northern District of California

on certain independently abstract ideas that use computers as tools"). Claim 1 does just that. Using rules to sort instant messages is an abstract idea, akin to filtering emails, and is also an activity that can be completed by humans. And as in *Symantec*, a person could keep the list of handling rules in her head—applying an instant message server to this abstract idea does not make it patentable subject matter. *See* 838 F.3d at 1314.

Ginegar's arguments based on the claim language fail to land. The fact that "[h]andling rules are not necessarily tied to message content or characteristics" does not change the analysis. *See* Oppo. at 6:1-2. People can just as easily respond to mail based on context as on content. Nor would the invention's use of a specific class of handling rules change the analysis.[3] Further, the benefits that Ginegar describe, of avoiding distractions and setting user preferences, result from performing abstract ideas in an instant message environment. *See* FAC at ¶¶ 21-22; *cf. BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018) ("These benefits, however, are not improvements to database functionality. Instead, they are benefits that flow from performing an abstract idea in conjunction with a well-known database structure."). Considering the elements in combination likewise does not change the analysis—the "claim's character as a whole" is still directed to the abstract idea of collecting information and analyzing that information according to a set of rules. *See Enfish,* 822 F.3d at 1335; *see also FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) (holding that claims reciting a method of collecting a specific type of information, applying predetermined rules to analyze the data, and providing notification of the results of the analysis were directed to an abstract idea).

Ginegar also argues that Claim 1 is directed to an improvement in instant message technology: "a method of enhancing an instant message system using a specific type of server to send a specific class of handling rules to an instant message client." *See* Oppo. at 10:28-11:4. This argument is not compelling. To be sure, claims "purporting to improve the functioning of the

---

[3] Nothing in the claim language indicates that the handling rules are special rules, as Ginegar alleged at oral argument. *See* Tr. [Dkt. No. 66] 20:13-17. Even if they were, that alone would not elevate the claim to patentable subject matter. In *Electric Power*, the Federal Circuit explained that collecting information with particular content, "analyzing information by steps people go through in their minds," without more, and "presenting the results of abstract processes of collecting and analyzing information," also without more, were all abstract ideas. *See* 830 F.3d at 1353-54. Therefore, it is immaterial whether the claims analyze particular content or apply a particular type of rule.

United States District Court
Northern District of California

1    computer or improving an existing technological process might not succumb to the abstract idea

2    exception." *Enfish*, 882 F.3d at 1335 (internal modifications omitted).  However, the claim

3    language of the '521 Patent is not directed to a specific improvement to instant message

4    technology.

5          Ginegar contends that the '521 Patent contains an inventive concept because it recites a

6    presence and awareness server that "provides publication and/or notification of presence

7    information for each user" and "allows the handling rules to be utilized to actively, adaptively,

8    and/or dynamically enhance the instant messaging environment."  Oppo. at 5:13-23 (citing '521

9    Patent at 4:9-34, 5:23-30).  While Claim 1 recites an "instant message server," there is no

10   language in the claim that further describes the server.  *See* '521 Patent at 18:4-5.  Ginegar points

11   to the specification, contending that "the server is described as a 'presence and awareness server.'"

12   *See* Oppo. at 5:16-17 (citing '521 Patent at 4:9-34 ("the illustrated system includes a presence and

13   awareness server")).  While the specification describes a presence and awareness server, but this is

14   only one type of instant message server.  *See, e.g.,* '521 Patent at 4:9-16.  This much is apparent

15   from the written description.  For example, when describing the embodiment in Figure 4, the

16   specification explains that "[e]ach handling rule may be created, stored and evaluated locally

17   and/or via a corresponding server *such as* the presence and awareness server . . . depending upon

18   the specific implementation."  *See id*. at 8:30-33 (emphasis added); *see also id*. at 9:35-40 ("on an

19   instant message application server such as the presence and awareness server.").

20         The Federal Circuit has "repeatedly held that features that are not claimed are irrelevant as

21   to step 1 or step 2 of the *Mayo/Alice* analysis."  *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,

22   967 F.3d 1285, 1293 (Fed. Cir. 2020); *see also ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d

23   759, 769 (Fed. Cir. 2019) ("[A]ny reliance on the specification in the § 101 analysis must always

24   yield to the claim language . . . the specification cannot be used to import details from the

25   specification if those details are not claimed.").  Similarly, disclosing an improvement in the

26   specification not recited in the claims does not convert an otherwise ineligible claim into

27   patentable subject matter.  *See Berkheimer*, 881 F.3d at 1369 (stating that when improvements are

28   described in the specification, "to the extent they are captured in the claims . . . we must analyze

United States District Court
Northern District of California

the asserted claims and determine whether they capture these improvements").  Claim 1 simply does not recite the presence and awareness server upon which Ginegar relies.

The case that Ginegar points to is inapposite, as the claim at issue there recited critical advancements over the prior art.  In *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313-16 (Fed. Cir. 2016), the Federal Circuit held that a claim was not directed to an abstract idea when it recited rules to transform a traditionally subjective process performed by human artists into a mathematically automated process executed on computers.  The same was true in *Enfish*, where the Federal Circuit held that the claims at issue were directed to a particular improvement in a database system because the claim language recited the invention's specific improvements—"by employing a flexible, self-referential table to store data"—and the invention was directed to those specific improvements.  *See* 882 F.3d at 1337.

No similar language is present in Claim 1.  Nothing in the claim language tethers a recited element (such as the server or handling rules) to the function of improving instant message technology or to an improvement over a traditional process that produces the same result in a fundamentally different way.  Although the '521 Patent's specification claims to "enhance" instant message systems, the specification "is not a substitute for, nor can it be used to rewrite, the chosen claim language."  *See SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004); *see also* '521 Patent at 3:7-10 (stating that the invention "enhance[s] a user's experience with an instant messaging system").

This analysis applies with equal force to Claim 2.  Claim 2 recites the additional element of autonomically generating a handling rule.  *See* '521 Patent at 18:23-26.  Notwithstanding the additional limitation, Claim 2 is still directed to an abstract idea because: (1) it is dependent on Claim 1 and is also directed to responding to instant messages in a certain way; and (2) nothing in the claim language tethers the additional element to a technological improvement.

Accordingly, Claims 1 and 2 are directed to an abstract idea.

**B.     Whether The Claims Add An Inventive Concept**

Even if a claim is directed to an ineligible concept, it may contain additional elements that transform the nature of the claim into a patent-eligible concept.  *Mayo*, 566 U.S. at 77-78.  At step

2 of the *Mayo/Alice* test, courts must "search for an inventive concept" by "consider[ing] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217; *Enfish*, 822 F.3d at 1334.  Adding "well-understood, routine, conventional activity already engaged in . . . are not sufficient to transform" unpatentable subject matter into patentable applications of ineligible concepts.  *See Mayo*, 556 U.S. at 79-80.

Ginegar's primary argument is that Slack has not shown by clear and convincing evidence that the '521 Patent's claims do not include an inventive concept.  *See* Oppo. at 12:8-24.  It further contends that the claims "recite a specific implementation of an invention that is neither routine nor conventional," and that the specification "discusses how the method claims in the '521 Patent can enhance an instant message system in a way that is not well-known, routine, or conventional." *See id.*  But the purported enhancement depends on the presence and awareness server—an unclaimed embodiment.  As explained above, "features that are not claimed are irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis." *Am. Axle*, 967 F.3d at 1293.  The specification "cannot be used to import details from the specification if those details are not claimed." *See ChargePoint,* 920 F.3d at 769.  And merely reciting tangible components (such as an instant message server) is not enough to transform the claim into patentable subject matter.  *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016).

Ginegar's reliance on *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016), is misplaced.  *See* Oppo. at 11:26-12:15.  Unlike the claims in *Bascom*, Claim 1 does not recite an ordered combination of claim limitations that transform an abstract idea "into a particular, practical application of that abstract idea." *See Bascom*, 827 F.3d at 1352.  In *Bascom*, the claims were directed to the abstract idea of filtering content on the internet; however, they contained an inventive concept in their unique method of filtering content.  *See id.* ("The claims carve out a specific location for the filtering system (a remote ISP server) and require the filtering system to give users the ability to customize filtering for their individual network accounts.").  Ginegar's argument is not analogous because the purported novel method is based on the unclaimed presence and awareness server.  *See* Oppo. at 12:22-23.

1    Ginegar further argues that Claim 2 adds an additional inventive concept because it

2    "discloses an 'adaptive and/or autonomic behavior manager' that provides dynamic autonomic

3    features for instant message enhancement."  *See id*. at 12:25-13:7 (citing in part '521 Patent at

4    6:66-7:11).  As with Claim 1, Ginegar points to embodiments disclosed in the specification that

5    are not found in the claim language itself.  According to the patent's written description, the

6    instant message server software *may* comprise an autonomic behavior manager.  *See* '521 Patent at

7    6:66-7:2.  This tells me that such a manager is not inherently present in any elements of Claim 2.

8    Because the claims do not contain inventive concepts, the '521 Patent does not survive a

9    section 101 eligibility analysis under Rule 12(b)(6).  Accordingly, Slack's motion to dismiss the

10   infringement claims premised on the '521 Patent is GRANTED with prejudice.[4]

11   **III.    THE '865 PATENT**

12   In the '865 Patent, three independent claims are asserted against Slack.  At the outset, all

13   three fall within patent-eligible categories under section 101.  Claim 1 is a method claim.  *See* 35

14   U.S.C. § 100(b); *see also* '865 Patent at 5:24 ("A method for generating a unified chat transcript . .

15   . .").  Claim 8 is a system claim and Claim 10 is a device claim; both are directed to tangible

16   things.  *See* '865 Patent at 5:65 ("A collaborative computing data processing system comprising . .

17   ."), 6:30 ("A computer program product comprising . . ."); *see also Digitech Image Techs., LLC v.*

18   *Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1348 (Fed. Cir. 2014) ("For all categories except process

19   claims, the eligible subject matter must exist in some physical or tangible form.").

20   However, I again conclude under *Mayo/Alice* that the claims are directed to abstract ideas,

21   and none involve an application of such that elevates the claim to more than a patent on the

22   abstract idea itself.

23   **A.    Whether The Claims Are Directed To An Ineligible Concept**

24   Slack argues that the claims asserted from the '865 Patent are directed to the "idea of

25   _____

26   [4] Although Ginegar did not request leave to amend its infringement claims, I have considered the general rule that
"leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect."  *See Vess v.*

27   *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003).  Allowing Ginegar to amend its claims related to the
'521 Patent cannot cure the fact that its alleged improvement is not recited in the claim language.  *See Aatrix*, 882

28   F.3d at 1127 (stating that allowing a patentee to file an amended complaint is not futile when it can allege facts
directed to the inventive concepts in its claimed invention).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    recording two types of messages in one place" and not to any improvements in computer or instant

2    messaging technology.  MTD at 1:23-27, 16:7-10.

3        Ginegar asserts that the invention provides a solution for "the need to create unified

4    transcripts of multi-modal instant message conversations."  *See* FAC at ¶¶ 34-42, 45; *see also*

5    Oppo. at 13:26-14:8.  As with the '521 Patent, Ginegar contends that an improvement—the

6    "multi-modal transcript unification logic"—results in the '865 Patent not being directed to an

7    abstract idea.  *See* Oppo. at 14:15-19.

8                        **1.      Claim 1**

9        Claim 1 is directed to a method of automatically generating a transcript that combines both

10   text and audio messages exchanged during an instant message session.  *See* '865 Patent at 5:24-44.

11   Again, this merely involves using a computer to apply an abstract idea.  *See Alice,* 573 U.S. at 223

12   (explaining that "[s]tating an abstract idea while adding the words 'apply it with a computer'" is

13   not enough for patent eligibility); *see also Elec. Power Grp.*, 830 F.3d at 1354.  The Federal

14   Circuit has also held that claims reciting a method for creating a single display of information

15   collected from various sources are directed to an abstract idea.  For example, in *Intellectual*

16   *Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017), it determined

17   that claims which recited creating a "dynamic document" using content from multiple electronic

18   records amount to the "abstract concept of collecting, displaying, and manipulating data of

19   particular documents."  And humans can perform this abstract idea, including by taking words

20   from written mail and words from a voicemail recorded on an answering machine and combining

21   them into a typed transcript.  Claim 1 only automates this process.

22       Moreover, Ginegar has not tied the function of automatically logging a unified transcript to

23   an improvement in the *technology* of instant message systems.  *Contra DDR Holdings, LLC v.*

24   *Hotels.com, L.P.*, 773 F.3d 1245, 1258–59 (Fed. Cir. 2014) (finding a method patent eligible

25   where the claims recited a specific manipulation of the internet such that the claims did not rely on

26   a "computer network operating in its normal, expected manner"); *see also Enfish*, 822 F.3d at

27   1335-36 (distinguishing between claims that focus "on the specific asserted improvement in

28   computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which

computers are invoked merely as a tool"). Again, *McRO* is instructive. There, the Federal Circuit held that a claim was not directed to an abstract idea because it did not recite the mere desired result of automating an activity, but rather, a specific solution for accomplishing that goal. *See* 837 F.3d at 1314. Claim 1 is not directed to producing a result in a different way; Ginegar does not sufficiently identify how its method of combining message types is fundamentally different from traditional methods of data combination and recording. At the end of the day, it is the incorporation of a computer (or analogous user device) that improves the instant messaging process by creating the unified transcript. Claims that "simply use a computer as a tool to automate conventional activity" are directed to abstract ideas. *See McRO*, 837 F.3d at 1314.

### 2.   Claim 8

Claim 8 is directed to a data processing system which includes hardware and software elements that maintain, and perform functions associated with, the instant message session. *See* '865 Patent at 5:65-6:25. The elements present in Claim 8 (but not in Claim 1) are a processor, an instant messenger, and a multi-modal transcript unification logic (the "logic element") that can be executed by the processor to perform the method claimed in Claim 1. *See id.* Like Claim 1, Claim 8 is directed to the goal of combining message types into a unified transcript—an abstract idea. *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018).

The question is whether the additional recited elements are tied to an improvement in the technology of the instant message system. *See Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1342 (Fed. Cir. 2013) (stating that when method claims are found to be patent ineligible, the court compares the substantive limitations of the method and system claims to "determine whether the system claim offers meaningful limitations 'beyond generally linking the use of the [method] to a particular technological environment'"). They are not. Although the additional hardware and software elements are directed to a particular use, the claims do not state how the elements aid the method, the extent to which they do so, or their significance to the method's performance. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (finding claims patent ineligible because they were "silent as to how a computer aids the method, the extent to which a computer aids the method, or the significance of a computer to the

performance of the method").  These additional elements cannot circumvent the fact that combining two types of data, such as text and voice messages, and displaying those data in a single transcript, is still directed to an abstract idea.

Moreover, Ginegar makes only conclusory allegations about the logic element and does not explain how it improves the technology of instant message systems.  *See* FAC at ¶ 44 (asserting that the '865 Patent "uses a novel multi-modal transcript logic that can be coupled to the collaborative environment through a host server"); Oppo. at 14:2-3 ("The invention of the '865 Patent solves this shortcoming in the prior art with a multi-modal transcript unification logic that can" carry out the method steps of Claim 1).  Therefore, Claim 8 fails to recite meaningful limitations and "essentially implement[s] the process of the method claim on a general purpose computer."  *See Accenture*, 728 F.3d at 1341.  As the Federal Circuit noted in *Accenture*, "system claims that closely track method claims and are grounded by the same meaningful limitations will generally rise and fall together."  *See id.* (citing approvingly *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1274 n.1).

### 3.     Claim 10

Claim 10 is directed to a computer program product that essentially performs the method in Claim 1.  *See* '865 Patent at 6:29-55.  Again, Ginegar does not allege facts supporting how this claim—with its additional recited elements of a "computer usable storage medium" and "computer usable program code"—results in the purported improvement of creating a unified transcript.  *See id.*; *see also Accenture*, 728 F.3d at 1341.  Although "[s]oftware can make non-abstract improvements to computer technology just as hardware improvements can," nothing in Claim 10 indicates that the recited software product improves instant messaging technology.  *See Enfish*, 822 F.3d at 1335.

Claim 10 is unlike the claim in *Enfish*, which disclosed a four-step algorithm that achieved an abstract goal.  *See id.* at 1336-37.  Because the specification discloses no algorithm, Ginegar cannot explain how the program code in Claim 10 achieves the underlying goal of unifying text and audio messages into a single transcript.  *See also Interval Licensing*, 896 F.3d at 1344 (explaining that software-based claims "have failed to pass section 101 muster, because they did

United States District Court
Northern District of California

not recite any assertedly inventive technology for improving computers as tools and/or because the elements of the asserted invention were so result-based that they amounted to patenting the patent-ineligible concept itself").

### B.   Whether The Claims Add An Inventive Concept

Ginegar contends that the logic element disclosed in the '865 Patent is novel in that it "can be coupled to the collaborative environment through a host server," and that an inventive concept lies in the ability to automatically log a multi-modal chat transcript. *See* FAC at ¶ 44; Oppo. at 16:1-2.  The thrust of its argument is that Slack failed to prove by clear and convincing evidence that the patent recites "nothing more than conventional, routine and well understood steps that occur in a generic instant messaging session." *See* Oppo. at 16:2-10 (quotation marks omitted).

The underlying alleged inventive concept in the '865 Patent is the ability to log a multi-modal chat transcript from an instant message session, which is enabled by the logic element. *See* Oppo. at 13:25-16:10.  However, the logic element does not appear in the claim language of Claims 1 or 10.  Nor does Ginegar point to any place in the specification to support that the element is implicitly claimed in Claims 1 or 10. *See id*.[5]  In fact, Ginegar concedes that the logic element is absent from Claim 1. *See id*. at 13:12-13 ("Claim 1 is a method claim and does not contain terms that are in system Claim 8, such as a multi-modal transcript unification logic.").

Moreover, the logic element in Claim 8 is a tangible element executed on a processor which is not recited in the method claim of Claim 1. *See* '865 Patent at Claims 1, 8.  While Claim 1 recites "logging the classified voice and text messages in a single transcript," this describes the step of recording both message types in a unified transcript; it does not specify what structural elements effect this step. *See id*. at 5:39-40.  In other words, Claim 1 is broader than Claim 8

---

[5] At oral argument, I asked Ginegar to point to where in the specification the inventive concept is disclosed. *See* Tr. at 10:19-21.  Ginegar responded that Column 4 discussed the logic element, specifically by referencing Figure 4, and argued that the element could be contained in different embodiments of hardware or software. *See id*. at 10:22-11:12.  Neither discloses an inventive concept.  The referenced portion of Column 4 states that "[e]mbodiments of the invention can take the form of an entirely hardware embodiment, an entirely software embodiment or an embodiment containing both hardware and software elements." *See* '865 Patent at 4:46-49.  This says nothing about the logic element nor describes how this would constitute an improvement in technology.  And Figure 4 is a flow chart "illustrating a process for generating a unified chat transcript." *See id*. at 3:7-9.  Notwithstanding the fact that the figure contains less detail than the method in Claim 1, the words "a process" indicate that this is one embodiment.

United States District Court
Northern District of California

1   because Claim 8 limits the method to being performed on a specific system.  *See id*. at 5:65-66

2   ("A collaborative computing data processing system comprising . . .").

3          Claim 10 recites a computer product having computer usable program code.  *See id*. at

4   6:29-31.  The specification discloses that the logic element "*can* include program code," meaning

5   that code is not inherently part of the logic element.  *See id*. at 4:11-20 (emphasis added).  Because

6   program code is an essential element of Claim 10—and not all logic elements contain program

7   code—the logic element cannot be read into Claim 10.  Because the logic element cannot be

8   tethered to the language in Claims 1 and 10, that element cannot serve as the basis for alleging

9   improvements in those two claims.

10         Claim 8 is the only claim asserted from the '865 Patent that contains the multi-modal

11   transcript unification logic element in the body of the claim.  *See* '865 Patent at 6:4.  However,

12   with only a vague reference to the specification and conclusory allegations in the FAC, Ginegar

13   fails to allege how this elevates the claim to patentable subject matter.  While Ginegar may

14   certainly rely on the specification to support its allegations, it must explain how details disclosed

15   in the specification connect to the claimed element.  *See Symantec*, 838 F.3d at 1322 (explaining

16   that the "district court erred in relying on technological details set forth in the patent's specification

17   and not set forth in the claims to find an inventive concept").  It failed to do so.

18         In addition, Ginegar has not alleged facts to show the additional hardware and software

19   elements (outside of the logic element) recited in the asserted claims could be considered inventive

20   concepts.  Generic computer, network, and internet components (such as the processor recited in

21   Claim 8) are not inventive on their own.  *See Bascom*, 827 F.3d at 1349.  Software-based elements

22   (such as the program code recited in Claim 10) must do more than achieve results; they are only

23   inventive when they improve a computer's technology.  *See Interval Licensing*, 896 F.3d at 1344.

24         Finally, Ginegar argues that automatically logging a chat transcript is an inventive concept;

25   however, this is merely using a computer to perform an abstract idea.  *See* Oppo. at 15:28-16:2;

26   *see also Alice,* 573 U.S. at 223.  Such an invention might make recording a multi-modal instant

27   message communication faster and more efficient, "[b]ut relying on a computer to perform routine

28   tasks more quickly or more accurately is insufficient to render a claim patent eligible."  *See OIP*

1   *Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015).  As the Federal Circuit

2   has stated, "a claim for a *new* abstract idea is still an abstract idea."  *Synopsys*, 839 F.3d at 1151.

3       Because Ginegar does not adequately allege its claims contain inventive concepts, it does

4   not survive a section 101 eligibility analysis under Rule 12(b)(6).  Accordingly, Slack's motion to

5   dismiss the infringement claims premised on the '865 Patent is GRANTED, with leave to amend

6   only the infringement claim premised on Claim 8.[6]

7                                                   **CONCLUSION**

8       The motion to dismiss is GRANTED with limited leave to amend.  Ginegar may only

9   amend its claim asserted on Claim 8 of the '865 Patent.  All other claims are DISMISSED with

10  prejudice.  Any amended complaint shall be filed within 20 days of the issuance of this Order.

11      **IT IS SO ORDERED.**

12  Dated: June 8, 2022



William H. Orrick
United States District Judge

United States District Court
Northern District of California

---

[6] It would not be futile to grant leave to amend the infringement claims premised on Claim 8.  *See Aatrix*, 882 F.3d at 1127.  Ginegar has alleged some facts supporting that the multi-modal transcript unification logic element recited in Claim 8 is an improvement in instant messaging technology and/or an inventive concept.  *See* FAC at ¶¶ 44, 46; Oppo. at 14:2-7.  Should Ginegar amend, it must allege facts supporting how the logic element improves the technology of instant message systems (at step 1 of *Mayo/Alice*) or how it constitutes an inventive concept (at step 2).