UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINEGAR LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>SLACK TECHNOLOGIES, INC,<br><br>    Defendant. | Case No. 22-cv-00044-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 78 |

Defendant Slack Technologies, Inc. ("Slack") moves to dismiss the Third Amended Complaint ("TAC") brought by plaintiff Ginegar LLC ("Ginegar"), which alleges that Slack infringed upon one of Ginegar's patents. Slack asserts that the only remaining claim in this case, Claim 8, does not recite patentable subject matter under the *Mayo/Alice* framework. Claim 8 is directed to a system that allows participants in an instant messaging session to exchange both audio and text messages, and then logs a unified transcript of those messages. But it is directed to an ineligible concept (the abstract idea of combining different message types in a single transcript) and recites only an improved result to instant message technology, not the specific means or methods for accomplishing it. And Ginegar has not shown any inventive concept adding "significantly more" to the abstract idea. The purportedly inventive concept—the logic element that logs a single transcript of audio and text messages exchanged during an instant messaging session—is nothing more than using a computer to perform the abstract idea itself. For these reasons, Slack's motion is GRANTED. And because I previously granted a motion to dismiss on this ground, dismissal is without leave to amend.

**BACKGROUND**

Ginegar is the assignee and owner of U.S. Patent No. 9,760,865 (the "'865 Patent"). TAC

[Dkt. No. 77] ¶¶ 1-2.  The '865 Patent, issued on September 12, 2017, claims methods and systems related to multi-modal instant messaging sessions, where users can communicate via text and audio in a single chat session.  *Id*. ¶¶ 10, 12, 15.  It has 16 claims, only one of which, Claim 8, remains at issue.  *See* Order Granting Mot. to Dismiss ("First MTD Order") [Dkt. No. 71] 21:8-10.

Claim 8 is directed to a system that maintains the multi-modal session and records a corresponding transcript that contains both the audio and text messages exchanged in that session.  *See* TAC, Ex. B ("'865 Patent") at 5:65-6:25.  Claim 8 is an independent claim and recites the following:

> A collaborative computing data processing system comprising:
>
> a processor;
>
> an instant messenger configured to maintain a multi-modal instant messaging session between first and second conversants; and
>
> multi-modal transcript unification logic, executing on the processor, and configured to
>
> establish a single instant messaging session between two conversants,
>
> receive text messages as part of a conversation between the two conversants, through the single instant messaging session,
>
> embed in the instant messaging session a voice message received from one of the two conversants,
>
> classify each one of the embedded voice message and the received text messages by type, the type of message being one of a voice message and a text message,
>
> determine if the one of the voice and text messages is classified as a voice message, and
>
> log the classified voice and text messages in a single transcript of conversation between the two conversants occurring in the single instant messaging session in response to determining that the one of the voice and text messages is classified as a voice message.

*Id*.

According to the TAC, the multi-modal transcript unification logic in Claim 8 improves the prior art (the technology of instant messaging systems) because it solves a shortcoming: it (1)

2

allows conversants to use both text and voice in a single session, and (2) automatically logs a unified chat transcript containing both text and voice messages.  TAC ¶¶ 39-40.

In February 2021, Ginegar sued Slack in the District of Colorado, alleging infringement of two patents: the '865 Patent and U.S. Patent No. 9,367,521 ("the '521 Patent").  Dkt. No. 1.  The complaint was later amended and the case transferred to this district in early January 2022.  Dkt. Nos. 27, 47.  Slack moved to dismiss the amended complaint two weeks later.  Dkt. No. 55.

I granted Slack's motion to dismiss, finding that the claims at issue recited an abstract idea and failed to include an inventive concept elevating them to more than a patent on the abstract idea itself.  First MTD Order at 1:13-19.  I granted Ginegar leave to amend only its claim premised on Claim 8 of the '865 Patent, finding that it had "alleged some facts supporting that the multi-modal transcript unification logic . . . is an improvement in instant messaging technology and/or an inventive concept."  *Id*. at 21 n.6.  I further stated that should Ginegar file an amended complaint, "it must allege facts supporting how the logic element improves the technology of instant message systems . . . or how it constitutes an inventive concept."  *Id*.

Ginegar filed a Second Amended Complaint ("SAC") on June 28, 2022, that went beyond the scope of amendment that I had permitted by alleging infringement of other claims in the '865 Patent and '521 Patent.  Dkt. No. 72.  Ginegar then filed an unopposed motion for leave to file its TAC, which I granted.  Dkt. Nos. 73, 76.  Ginegar filed the TAC on July 12, 2022, and Slack again moved to dismiss.  Dkt. Nos. 77, 78.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a

1  right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

2      In deciding whether the plaintiff has stated a claim upon which relief can be granted, the
3  court accepts her allegations as true and draws all reasonable inferences in her favor. *See Usher v.
4  City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to
5  accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or
6  unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

7      "[I]n many cases it is possible and proper to determine patent eligibility under 35 U.S.C. §
8  101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed.
9  Cir. 2016). However, "plausible factual allegations may preclude dismissing a case under § 101
10 where, for example, nothing on the record refutes those allegations as a matter of law or justifies
11 dismissal under Rule 12(b)(6)." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d
12 1121, 1125 (Fed. Cir. 2018) (citations and internal modifications omitted). As the Federal Circuit
13 stated in *Aatrix*:

> [P]atentees who adequately allege their claims contain inventive concepts survive a
> § 101 eligibility analysis under Rule 12(b)(6). . . . While the ultimate determination
> of eligibility under § 101 is a question of law, like many legal questions, there can
> be subsidiary fact questions which must be resolved en route to the ultimate legal
> determination. . . . Whether the claim elements or the claimed combination are
> well-understood, routine, conventional is a question of fact.

18 882 F.3d at 1126-28.

## DISCUSSION

20     There are four statutory categories of subject matter than can be patented: processes,
21 machines, manufactures, and compositions. 35 U.S.C. § 101. Laws of nature, natural phenomena,
22 and abstract ideas are considered ineligible subject matter and are not patentable. *See Diamond v.
23 Chakrabarty*, 447 U.S. 303, 309 (1980). "Whether a claim is drawn to patent-eligible subject
24 matter under § 101 is a threshold inquiry, and any claim of an application failing the requirements
25 of § 101 must be rejected even if it meets all of the other legal requirements of patentability." *In
26 re Bilski*, 545 F.3d 943, 950 (2008) *aff'd but criticized sub nom. Bilski v. Kappos*, 561 U.S. 593
27 (2010).

28     The Supreme Court established a two-step inquiry, known as the *Mayo/Alice* test, for

determining whether a claim recites patentable subject matter. *See Mayo Collaborative Servs. v. Prometheus Labs., Inc*, 566 U.S. 66, 77-78 (2012); *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014). At the first step, the court must determine whether the claim is directed to an ineligible concept. *Mayo*, 566 U.S. at 77-78. If so, the court moves to the second step, where it considers whether the claim recites additional elements that "'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (citing *Mayo,* 566 U.S. at 78). The Supreme Court has described this second step as "search for an inventive concept"—something that adds "significantly more" to the otherwise-ineligible concept. *Id*. at 217-18 (citing *Mayo*, 566 U.S. at 72-73).

### I. Whether Claim 8 is Directed to an Ineligible Concept

Step one of the *Mayo/Alice* framework "applies a stage-one filter to claims, considered in light of the specification, based on whether their character as a whole is directed to excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (citation and quotation marks omitted). "In cases involving software innovations, this inquiry often turns on whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Finjan, Inc. v. Blue Coat Sys., Inc.,* 879 F.3d 1299, 1303 (Fed. Cir. 2018) (citation and quotation marks omitted). The Federal Circuit has found software inventions "to be patent-eligible where they have made non-abstract improvements to existing technological processes and computer technology." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019) (citing cases).

But "[a]n improved result, without more stated in the claim, is not enough to confer eligibility to an otherwise abstract idea. To be patent-eligible, the claims must recite a specific means or method that solves a problem in an existing technological process." *Id*. (citing cases). The Federal Circuit underscored this in *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020), noting that claims have been deemed directed to eligible matter where they focused "on a solution to a problem specifically arising in the realm of computer networks or computers" or where they identified "a specific improvement in computer capabilities or network functionality,

5

rather than only claiming a desirable result or function." And both the Supreme Court and the Federal Circuit also instruct courts to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334.

I previously held that Claim 8 was directed to an abstract idea of combining different message types into a unified transcript. First MTD Order at 17:15-17 (citing *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018) ("claims directed to a single display of information collected from various sources are abstract")). I further held that (i) the additional recited elements were not tied to an improvement in the technology of the instant messaging system and that (ii) Ginegar only made conclusory allegations about the multi-modal transcript unification logic and did not explain how it improves the technology. *Id*. at 17:18-18:14.

The TAC alleges that the logic element improves the technology of instant messaging systems "because it solves a shortcoming in the prior art" by "automatically log[ging] a unified chat transcript that contains both text and voice messages." TAC ¶ 27.[1] The question is whether the claim recites this with sufficient specificity, or whether it only claims a desirable result.

According to Slack, the TAC again falls short. MTD at 6:12-13. It argues that the TAC either repeats the SAC's conclusory allegations or adds new, also conclusory allegations that "do nothing to explain how the logic element specifically operates or otherwise improves the technology of instant message systems." *Id*. at 7:1-4. Moreover, Slack contends, the TAC does not explain "how 'log[ging] a unified chat transcript that contains both text and voice messages' is

---

[1] The TAC also alleges that the logic element improves instant messaging technology because it "allows conversants to use text and voice in a single chat session." TAC ¶ 27. As Slack notes, other allegations in the TAC, as well as the '865 Patent itself, belie this. Mot. to Dismiss ("MTD") [Dkt. No. 78] 8:7-16. In describing the background of the invention, the '865 Patent states that "when involved in a chat session, a user may converse with another user by providing a combination of text and audio messages in the chat session." '865 Patent at 1:44-46. The TAC also asserts that "[t]he prior art also taught the use of multi-model communication . . . where users communicate via different modes of communication, such as text and audio, in a single chat session." TAC ¶ 15. Somewhat confusingly, the following sentence then alleges that "[u]sers could not chat with each other by providing a combination text and message messages [sic] in the chat session." *See id*. Ginegar does not appear to respond to Slack's argument or otherwise explain this apparent discrepancy, instead focusing on the logic element's purported improvement of logging the unified chat transcript. *See generally* Oppo. [Dkt. No. 81]. Because the '865 Patent indicates that the prior art allowed conversants to use both text and audio in a single instant message session, and because Ginegar does not argue otherwise, I too will focus on the transcript as the improvement at issue.

1    any different from traditional methods of data combination and recording." *Id*. at 7:8-10.

2    In response, Ginegar argues that Claim 8 improves computer functionality and solves a
3    problem specifically arising in the realm of computers. Oppo. at 8:24-27. According to Ginegar,
4    before the invention of the '865 Patent, instant message users could communicate via text or audio
5    in real-time but "could not go back later and review the entirety of their communications as they
6    switched between text and audio." *Id*. at 8:27-9:4 (citing TAC ¶¶ 13-15, 17-18; '865 Patent at
7    1:44-56). Instead, users would only find a chronological transcript of the text communications
8    and separately stored individual audio files—if the audio conversation was even saved. *Id*. at 9:5-
9    8 (citing '865 Patent at 1:51-56). Ginegar contends that the logic element recited in Claim 8
10   solves this problem by "automatically creating a unified multi-modal transcript that included both
11   the text of the conversation and the audio files in one chronological and complete transcript." *Id*.
12   at 9:11-15 (citing TAC ¶¶ 26-38; '865 Patent at 2:32-43, 6:4-25).

13   Ginegar analogizes to *Data Engine Technologies LLC v. Google LLC*, 906 F.3d 999, 1007-
14   08 (Fed. Cir. 2018), where the Federal Circuit held that the asserted claims, which were directed to
15   a "specific method for navigating" electronic spreadsheets, were directed to patent-eligible subject
16   matter. *See id.* at 10:3-11:3. The court held that the method "provide[d] a specific solution to
17   then-existing technological problems in computers and prior art electronic spreadsheets," which
18   were cumbersome to navigate, "by providing a highly intuitive, user-friendly interface with
19   familiar notebook tabs for navigating the three-dimensional worksheet environment" that allowed
20   users to locate information more simply and quickly. *Data Engine Techs.,* 906 F.3d at 1008-09.
21   Similarly, Ginegar argues, Claim 8 "addresses what is otherwise an inefficient, burdensome, and
22   sometimes completely missing instant messaging process, by providing a user friendly, efficient,
23   and comprehensive transcript of text and audio conversations." Oppo. at 10:23-25.

24   Finally, Ginegar asserts that Slack wrongly focuses on how the invention is accomplished,
25   arguing that this analysis applies to enablement under section 112 of the Patent Act, not eligibility
26   under section 101. *Id*. at 11:4-14 (citing *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d
27   1285, 1302 (Fed Cir. 2020)). Under section 101, Ginegar argues, all it must show is that the claim
28   "goes beyond 'stating a functional result.'" *Id*. at 11:15-16 (citing *Am. Axle*, 967 F.3d at 1302).

7

Slack has the better argument. Although Ginegar identifies an improvement to instant messaging technology—automatically creating a single chat transcript with both text and audio messages—it does not explain the specific means or method underlying the improvement. It focuses only on the desired result: the unified chat transcript.

The cases that Ginegar rely on are distinguishable, primarily because the claims that were directed to a technological improvement or solution recited a level of detail not found in Claim 8. In *Finjan*, the patent at issue claimed a "behavior-based" method to virus scanning on computers. 879 F.3d at 1303-04. The Federal Circuit held that the asserted claims recited "more than a mere result," instead reciting "specific steps—generating a security profile that identifies suspicious code and linking it to a downloadable—that accomplish the desired result." *Id.* at 1305-06.

In *Data Engine Technologies*, the asserted patent solved a technological problem in computers "by providing a highly intuitive, user-friendly interface with familiar notebook tabs for navigating the three-dimensional worksheet environment." 906 F.3d at 1008. But the claim at issue recited "specific steps detailing the method of navigating through spreadsheet pages within a three-dimensional spreadsheet environment using notebook tabs." *Id.* The claim required "displaying on a screen display a row of spreadsheet page identifiers," which each "being a notebook tab." *Id*. It also required "at least one user-settable identifying character to label the notebook tab" and described "navigating through the various spreadsheet pages through selection of the notebook tabs." *Id*. Finally, the claim required a formula using those characters to "operate on information spread between different spreadsheet pages that are identified by their tabs." *Id.* In other words, the asserted claim did not just claim a technological solution and improvement to computer functionality. It did this *and* identified the "specific interface and implementation" for accomplishing that solution and improvement. *Id*. at 1008-09.

*Data Engine Technologies* relied in part on *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1362-63 (Fed. Cir. 2018), where the Federal Circuit also held that the asserted claims were directed to an "improved user interface for computing devices" and disclosed a "particular" and "specific" manner of summarizing and displaying a limited set of information to the user. Again, the claims recited a certain level of detail: the "particular manner

8

by which the summary window must be accessed"; the limited data set listed in that window; and the window's display. *Core Wireless*, 880 F.3d at 1362-63.

In contrast, Claim 8 lacks any such details when it comes to the asserted improvement, logging the unified chat transcript. The claim recites certain steps regarding the logic element itself, including that it establishes a single instant messaging session between two users, receives text messages, embeds voice messages, and classifies those messages by type. *See* '865 Patent at 6:4-25. Yet it does not explain how it "log[s] the classified voice and text messages in a single transcript of conversation." *See id*. Ginegar's argument that the logic element improves or solves a problem within instant messaging technology focuses on the prior art's inability to log a single transcript containing multi-modal communications. *See* TAC ¶¶ 27-28. But "[a]n improved result, without more stated in the claim, is not enough to confer eligibility to an otherwise abstract idea." *Koninklijke*, 942 F.3d at 1150. Claim 8 does not recite a "specific means or method" for accomplishing that result, beyond "log[ging] the classified voice and text messages in a single transcript." *See id*.; '865 Patent at 6:20-22. Without more, Claim 8 remains directed to an abstract idea: combining different message types into a single transcript.

For these reasons, Claim 8 is directed to an ineligible concept. Ginegar has not shown how the logic element recited in the claim improves or solves a problem in instant message systems, namely because it relies on an improved result (the unified chat transcript) and not the specific means or methods for accomplishing it. Accordingly, I must proceed to the second step of *Mayo/Alice* and determine whether the logic element adds an inventive concept.

**II.     Whether Claim 8 Adds an Inventive Concept**

At step two of *Mayo/Alice*, the court must "search for an inventive concept" by "consider[ing] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217; *Enfish*, 822 F.3d at 1334 (citation and quotation marks omitted). For a concept to be inventive, it "must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347-48 (Fed. Cir.

2014) (citing in part *Alice*, 573 U.S. at 225).

On the last motion to dismiss, Ginegar failed to allege how the logic element elevated Claim 8 to patentable subject matter, relying on "only a vague reference to the specification and conclusory allegations in the FAC." *See* First MTD Order at 20:10-13. More specifically, I found that Ginegar's argument that automatically logging a chat transcript was an inventive concept amounted to "merely using a computer to perform an abstract idea." *Id*. at 20:24-26 (citing *Alice*, 573 U.S. at 223). I noted that even if this invention made recording a multi-modal instant message conversation "faster and more efficient," "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *Id*. at 20:26-21:2 (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015)).

According to Slack, Ginegar still has not shown how the logic element constitutes an inventive concept. MTD at 10:1-13. Instead, Slack argues, Ginegar only describes the step of recording both message types in one transcript. *Id*. (citing TAC ¶ 26). Moreover, Slack contends, Ginegar has not alleged facts showing that the logic element is not a "generic computer, network, or internet component, which does not constitute an inventive concept." *Id*. at 10:14-15 (citing *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016)).

Slack's primary argument is that the logic element amounts to the abstract idea itself and does not add "significantly more" as required to add an inventive concept. *Id*. at 11:14-13:1. It notes that the TAC "identifies the role of the logic element" as establishing concurrent voice and text messaging sessions, receiving both voice and text messages through those sessions, and automatically logging the unified chat transcript. *Id*. at 11:20-24 (citing TAC ¶¶ 22, 26). Because concurrent voice and text messaging were known in the prior art, Slack argues, and because Ginegar does allege that the first two steps were not routine or conventional, nor "carried out via anything other than generic, conventional, or routine components," all that remains is the step of logging the unified transcript. *Id*. at 11:24-12:3. And that, according to Slack, is "nothing more than the abstract idea itself." *Id*. at 12:2-3.

Slack relies in part on *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019), where "the alleged 'inventive concept' that solves problems identified in the field" was

10

that electric vehicle charging stations were "network-controlled." But the Federal Circuit held that "network control is the abstract idea itself, and 'a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.'" *Id*. (citing *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018)).

In *BSG Tech*, to which Slack also analogizes, the Federal Circuit noted that the "only alleged unconventional feature" of the claims at issue was "the requirement that users are guided by summary comparison usage information or relative historical usage information." *See* 899 F.3d at 1291. The court determined that this "simply restate[d] what we have already determined is an abstract idea," and thus did not add "significantly more" to it. *Id*.

Ginegar responds that the logic element, "contained in a tangible, physical computer component," constitutes an inventive concept because it solves deficiencies in the prior art by logging the unified chat transcript. *See* Oppo. at 13:14-14:5 (citing in part '865 Patent at 1:38-56, 5:65-6:25; TAC ¶¶ 25-29). It then cites to a handful of cases where the Federal Circuit held that solutions to deficiencies constituted inventive concepts, even if they used generic or well-known components. *Id*. at 13:25-14:5.

But Ginegar misses the point: the problem is not that Claim 8 uses generic or well-known components to carry out an inventive concept. It is that, as alleged, the logic element is not an inventive concept because it logs a unified chat transcript— *the abstract idea itself*. *See* TAC ¶¶ 27-29, 40-41. The use of an ineligible concept "cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *ChargePoint*, 920 F. 3d at 774. Moreover, Ginegar has not shown how the logic element amounts to more than using a computer to carry out that abstract idea, which does not confer eligibility. *See Alice*, 573 U.S. at 223 ("[I]f a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility.") (citation and modifications omitted); *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) (reciting a "generic computer element—a processor—and a series of generic computer 'components' that merely restate their individual functions" only "describes the functions of the

abstract idea itself").

The cases that Ginegar cites are not particularly helpful because they do not speak directly to this issue. In *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019), the question before the court was whether the claimed techniques were well-known or conventional. In *Aatrix*, it was whether the purported improvement was instead a routine and conventional use of a computer. 882 F.3d at 1129. And in *Berkheimer v. HP Inc*, 881 F.3d 1360, 1370 (Fed. Cir. 2018), the Federal Circuit held that the lower court improperly granted summary judgment given the genuine dispute of fact over whether certain claims performed well-understood, routine, and conventional activities. Notably, the *Berkheimer* court held that other claims were ineligible because their limitations "amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components." *Id*.

It is that latter issue that renders Claim 8 ineligible, as were the claims in *ChargePoint* and *BSG Tech*. I agree with Ginegar that "[w]hether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art." *See Berkheimer*, 881 F.3d at 1369. Whether the logic element recites an inventive concept does not depend on whether establishing a single instant message session or receiving both voice and text messages in that session were known in the prior art. But Ginegar does not explain how logging the unified chat transcript—which solves the problem identified in the TAC and '865 Patent—is anything more than the abstract idea itself, let alone adds something "significantly more." Nor has it shown how the logic element amounts to more than a computer carrying out that abstract idea.[2]

Because Ginegar has not adequately alleged that Claim 8 contains an inventive concept, it does not survive the section 101 eligibility analysis under *Mayo/Alice*. Slack's motion to dismiss the infringement claim, which is premised on Claim 8 of the '865 Patent, is GRANTED.

---

[2] Ginegar makes a similar burden of proof argument as it did on the prior motion to dismiss, arguing that under *Berkheimer*, the question of whether a claim element or elements are well-understood, routine, and conventional is a question of fact that must be proven by clear and convincing evidence. Oppo. at 14:7-18 (citing *Berkheimer*, 881 F.3d at 1368). It then contends that Slack has not met this burden. *See id*. But *Berkheimer* was appealed after summary judgment, not a motion to dismiss. 881 F.3d at 1362.

**CONCLUSION**

The motion to dismiss is GRANTED. Because Ginegar was unable to successfully amend the TAC after the First MDT Order, dismissal is without leave to amend. And as Claim 8 was the last potentially viable claim asserted by Ginegar, judgment shall be entered against it in this litigation.

**IT IS SO ORDERED.**

Dated: October 11, 2022



William H. Orrick
United States District Judge